# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

# 05-1094

## BLAINE STROTHER, ET AL.

## VERSUS

## CONTINENTAL CASUALTY INS., CO., ET AL.

**************

APPEAL FROM THE
THIRTY-THIRD JUDICIAL DISTRICT COURT
PARISH OF ALLEN, DOCKET NO. C-2002-004
HONORABLE PATRICIA C. COLE, DISTRICT JUDGE

**************

## SYLVIA R. COOKS
## JUDGE

**************

Court composed of Sylvia R. Cooks, John D. Saunders, and Marc T. Amy, Judges.

**AFFIRMED.**

Aaron J. Allen
224 St. Landry Street, Suite 3-F
P.O. Box 3204
Lafayette, Louisiana 70502
(337) 232-9918
COUNSEL FOR PLAINTIFF/APPELLANT:
    Blaine Strother

Andre' F. Toce
600 Jefferson Street, Suite 408
P.O. Box 2716
Lafayette, Louisiana 70502-2716
(337) 233-6818
COUNSEL FOR PLAINTIFF/APPELLANT:
    Blaine Strother

Bruce D. Beach
Ungarino & Eckert, L.L.C.
315 South College Road, Suite 239
Lafayette, Louisiana 70503
(337) 235-5656
COUNSEL FOR DEFENDANTS/APPELLEES:
    Continental Casualty Company,
    Southern Foods Group, Inc.,
    Foremost Dairy and
    Freddie Lynn Fair.

**COOKS, Judge.**

### STATEMENT OF THE FACTS

On January 16, 2001, Blaine Strother and his wife, Connie, were traveling northbound on U.S. Hwy 165, a four-lane divided highway in Oakdale. Although it was midmorning, the sky was dark and it was raining heavily. Freddie Lynn Fair, an employee of Foremost Dairies, Inc. was driving the company truck. The truck is approximately twenty-seven feet long. He was stopped at a stop sign on Jackson Street at the intersection of U.S. Hwy 165 waiting for traffic to clear before crossing the highway to make a delivery to a Circle K convenience store on the other side. Mr. Fair proceeded across the northbound lanes intending to stop in the median between the lanes to wait for southbound traffic to clear before proceeding across to the Circle K. Just as he reached the median and stopped, the Strother vehicle struck the side of the twenty-seven foot truck which was extended into the Strothers' northbound lane. The Strothers sued Freddie Fair, Foremost Dairies, Inc., and/or Southern Food Groups, Inc., and its insurer Continental Casualty Company. The matter was tried before a jury. The jury found Mr. Fair 100% at fault in causing the accident and awarded Blaine Strother the following:

| | |
|---|---|
| a. Physical Pain and Suffering (past, present, future) | $ 15,000 |
| b. Mental Pain and Suffering (past, present, future) | $ 20,000 |
| c. Physical Injury or Disability | $ 37,000 |
| d. Past Medical Expenses | $44,986.75 |
| e. Future Medical Expenses | $ - 0 - |
| f. Loss of Enjoyment of Life | $72,000 |
| g. Past Lost Wages | $60,000 |

h.  Future Lost Wages/                          $ - 0 -
Loss of Earning Capacity

Both parties have appealed.  Mr. Strother appeals asserting the jury erred in failing to award adequate past lost wages, future medical expenses and future loss of wages and fringe benefits. Foremost Dairies appeals asserting the trial court's jury instruction regarding the standard of care of a left-turning motorist was given in error and led the jury to conclude Mr. Fair was 100% at fault.  The Defendants contend a substantial portion of the fault should be allocated to Mr. Strother.  Foremost Dairies also contends the jury correctly concluded Mr. Strother was not entitled to future medical care or future lost wages. For the reasons assigned below, we affirm the judgment of the trial court.

## LAW AND DISCUSSION

**A.  Jury Instructions and Allocation of Fault**

The trial court gave the following charge to the jury:

A left turning motorist must yield to oncoming or overtaking traffic and a collision involving a left turning motorist gives rise to a presumption of fault on his part.

Foremost Dairies asserts the accident did not happen while Mr. Fair was making a left turn and, therefore, this charge was given in error and led the jury to conclude that Mr. Fair was 100% at fault.  The jury was presented with a detailed diagram of the accident in addition to the testimony of Mr. Fair.  He testified he was stopped in the middle lane, glanced over his left shoulder and saw the Strother vehicle ten feet from the truck.  Mr. Fair was ticketed for failure to yield and accepted a reprimand from his employer in which he admitted the accident was "totally avoidable and was due to the inattentiveness of the driver."  We find the jury had ample evidence to conclude the accident was caused solely by the fault of Mr. Fair by darting across two lanes of traffic and stopping in the middle lane with the back

4

end of his truck obstructing the northbound lane of Mr. Strother. We find this assignment of error without merit.

**B. Future medical expenses, future loss wages and fringe benefits**

The Plaintiff contends the jury awarded substantial damages for loss of enjoyment of life, physical and mental pain and suffering and physical injury, yet did not award future medical expenses. On part "c" of the jury verdict form, entitled "Physical Injury or Disability Suffered," the jury placed an "X" over the word "Disability," apparently concluding although Mr. Strother suffered physical injury as a result of the accident, he did not suffer any accident-related permanent disability which would require continued medical care.

Mr. Strother asserts the jury erred and the medical evidence supports an award of future medical expenses in the amount of $801,521.[1] Also, the Plaintiff asserts he is permanently disabled from engaging in any oilfield work and with a work-life expectancy of 33.5 years, his loss of future earnings and fringe benefits amounts to $885,355. Plaintiff's assertions rest primarily on the medical testimony of Dr. Scott Gammel, a physical rehabilitation specialist. We have reviewed the record and find, other than the testimony of Dr. Gammel, none of Mr. Strother's treating orthopedic surgeons (Dr. Raffai, Dr. Muldowny or Dr. Heard) supports the Plaintiff's position as to the need or extent of future medical care.

The record indicates immediately following the accident, Mr. Strothers was taken to Oakdale Community Hospital and was treated by the attending emergency room physician. On January 24, 2001, he saw an orthopedic surgeon, Dr. Elmer

---

[1] Plaintiff contends that he will require lumbar epidural steroid injections (LESI) three to four times a year for the rest of his life for a total of $211,342. Since Mr. Strother was twenty-five at the time of the accident, his life expectancy is 50.13 years. In addition, Plaintiff contends Dr. Gammel recommended radio frequency neuroblation (RFN) to treat median branch nerve pain for the rest of his life for a total of $242,758. Plaintiff contends a lifetime of physician visits and oral medication would cost approximately $141,227.

Raffai. Dr. Raffai found tenderness at the L5-S1 level and diagnosed a lumbar strain. He recommended physical therapy, anti-inflammatory medicine, and a muscle relaxer.

In February 2001, Mr. Strother consulted Dr. David Muldowny, another orthopedic surgeon. Dr. Muldowny diagnosed a cervical and lumbar strain. He continued to see Mr. Strother about once a month in March and April of 2001 and, at the same time, Mr. Strother was undergoing physical therapy in Oakdale. During this time, Dr. Muldowny testified he did not feel Mr. Strother was able to return to work. However, on May 3, 2001, approximately four months after the accident, Dr. Muldowny released Mr. Strother to return to his employment doing oilfield work.

On May 14, 2001, prior to returning to work, Mr. Strother was examined by Dr. James Trahan. Dr. Trahan testified, "I make him do a lot of things. He had to bend over and touch is toes, . . . and if they're having pain, you'll know, you know, you're going to catch the face expression . . . ."

Plaintiff was then required to perform the WorkSteps Protocol at Thomas J. Landry and Associates, under the supervision of a physical therapist, Katherine Marcowich. Ms. Marcowich testified that Mr. Strothers' performance during the WorkSteps evaluation either met or exceeded all requirements for re-employment at his former position as an oilfield deck hand. The medical history form completed on May 14, 2001, indicated Mr. Strother had a four month history of lumbar pain which had resolved. The form indicated the following: "No complaint of pain or discomfort at present."

When Mr. Strother returned to Dr. Muldowny with complaints of back soreness, Dr. Muldowny recommended an MRI which was performed on October 24, 2001. Dr. Muldowny reviewed the MRI and stated, as follows, "So it's either a disc protrusion or an osteophyte. You can't really tell. It's sometimes hard. My

interpretation of the MRI was there really wasn't a whole lot there either way, whether you call it spur or osteophyte, it's not much either way. I didn't think it was really a problem." Dr. Muldowny did not recommend surgery. On March 1, 2002, Mr. Strother was discharged from the physical therapy clinic.

On April 17, 2002, Mr. Strother was climbing a ladder at work. When he had ascended several rungs he slipped and fell backwards onto his extended right arm. He was seen and treated by the company physician two days later. Dr. Muldowny's progress notes of May 13, 2002, states "lumbar strain doing well." Dr. Muldowny saw Mr. Strother for the last time on September 26, 2002 and performed a physical exam. Dr. Muldowny did not find any limitation in his range of motion but noted Mr. Strother was complaining of back tenderness. At this time, Dr. Muldowny recommended a lumbar epidural steroid injection (LESI). However, Dr. Muldowny testified with regard to LESI: "[I]t's not really my first choice of what to do on people who are having mostly back pain because it works better for leg pain. But there gets to a point in the treatment of people where we start doing things that less than a 100% success just in an effort to try to get them some relief." Dr. Muldowny referred Mr. Strother to Dr. Scott Gammel, an anesthesiologist and chronic pain management specialist, for a LESI.

Dr. Gammel saw Mr. Strother for the first time on October 25, 2002. Based on Dr. Gammel's review of the MRI, he opined Mr. Strother had internal disc degradation, which as explained by Dr. Gammel was "just a fancy way of saying that there was damage to the disc internally. Over time that expressed itself as the disc protrusion that was noted about ten months later on the MRI. It was the final expression of his internal degradation." Dr. Gammel testified the automobile accident caused the internal disc derangement and when Mr. Strother continued to perform

7

manual labor in the oilfield the compression lead to a disc protrusion. He stated Mr. Strother would require continued LESI for the rest of his life three to four times a year. However, Dr. Gammel also testified that the fall from the ladder, which occurred in April 2002, could have been a significant compressive force on the disc causing it to become symptomatic. Additionally, Dr. Gammel stated he did not write any pain medication for Mr. Strother, but deferred to Dr. Heard, the orthopedic surgeon currently treating Mr. Strother. His office notes stated, "I explained to him [Mr. Strother] that since Dr. Heard was prescribing his pain medication, that I could not prescribe any other controlled substance medication, that he would ask Dr. Heard for any other pain management medications. We will otherwise try to get him scheduled as soon as possible for the diagnostic injections."

On November 18, 2002, approximately two years from the date of the automobile accident, Mr. Strother consulted a third orthopedic surgeon, Dr. Michael Heard. Dr. Heard stated the spondylitic spur or osteophyte, evident on the MRI, pre-existed the accident, but became symptomatic and was causing intermittent pain. With regard to whether Mr. Strother would experience future pain, Dr. Heard opined, "It's hard to say exactly how long he's going to have pain in the future, but we do know that the majority of people who have minor back injuries where it's just limited to soft tissue injury, these people should be pain free and asymptomatic, the majority of them within two to three months." Although he admitted Mr. Strother's injury was a "little bit more than that," he did not recommended surgery and would prescribe anti-inflammatory and non-narcotic pain medications. Mr. Strother's last visit with Dr. Heard was May 2003.

A jury's findings of fact are reviewed under the manifest error standard of review. *Powell v. Regional Transit Authority*, 96-715 (La. 6/18/97), 695 So.2d 1326.

8

When a jury fails to award any element of future damages, a reviewing court may conclude that the jury found the plaintiff's pain, suffering, impairment and economic losses did not extend past the date of trial. *Basco v. Liberty Mut. Ins. Co.*, 05-143 (La.App. 3 Cir. 8/17/05), 909 So.2d 660.

We have reviewed the medical evidence and find no inconsistency in the jury's verdict. Dr. Muldowny, the treating orthopedic surgeon, diagnosed a cervical and lumbar strain due to the accident. He treated Mr. Strother conservatively with medication and physical therapy. Mr. Strother returned to his former employment performing manual labor four months after the accident. When Mr. Strother continued to complain of back pain, an MRI was ordered by Dr. Muldowny. Despite Mr.Strother's subjective complaints of pain, Dr. Muldowny testified the MRI indicated "there really wasn't a whole lot there either way . . . . I didn't think it was really a problem." Dr. Muldowny's finding was supported by the testimony of Dr. Michael Heard. Neither orthopedic surgeon recommended future surgery or the necessity for lumbar epidual steroid injections on a regular basis . The jury had ample medical evidence to conclude any back problems related to the accident resolved prior to trial and any lingering back pain which lead to a referral to Dr. Gammel could have been caused by his fall from a ladder. We find no error in the jury award.

**DECREE**

Based on the foregoing review of the record, we affirm the decision of the trial court. All costs of this appeal are assessed to Blaine Strother.

**AFFIRMED.**

9